[Cite as *State v. Mills*, 2022-Ohio-3866.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-A-0006** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DORIAN JOSEPH MILLS, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 00045 |

**O P I N I O N**

Decided: October 31, 2022
Judgment: Affirmed in part, reversed in part, and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}     Appellant, Dorian Mills, appeals his convictions of two counts of Felonious Assault, in violation of R.C. 2903.11(A)(2), and one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1).  Appellant asserts that: 1) his convictions were against the manifest weight of the evidence; and 2) his sentence is contrary to law because the court failed to make the findings to impose consecutive sentences.

{¶2}     For the following reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded with instructions.

{¶3} On January 13, 2021, Colton Alex ("Alex") gave his friend, Guy Gonzalez ("Gonzalez"), a ride home. When Alex and Gonzalez arrived at the residence, they heard a loud bang and Alex felt pain in his head. They saw a hole in the window and ducked down after realizing someone was shooting at them. They heard a second shot, which struck the vehicle's back window. Gonzalez exited the vehicle and started yelling "D stop" and "D knock it off." Alex called the police.

{¶4} Officers Caruso and Bainton first arrived at the scene. They saw the vehicle with two bullet holes in it, and a shell casing by a blue car in the driveway. The officers did not see the shooter. Gonzalez told Officer Caruso that he did not see the shooter, but thought the shooter was Appellant, because Gonzalez's sister and Appellant had recently broken up and Appellant was upset.

{¶5} Lieutenant Palinkas arrived at the scene and interviewed Gonzalez's mother, Jaime, who owns the residence. Jaime told Lieutenant Palinkas that she thought Appellant was the shooter. Lieutenant Palinkas reported to Appellant's residence. Appellant admitted to being at Gonzalez's home and to firing two shots at the vehicle while standing next to the blue car by the garage, where the shell casing was found. Appellant told Lieutenant Palinkas that he heard someone yelling, fled the scene, and hid the weapon on his way home. Appellant told the officers where to look for the weapon and described it to Lieutenant Palinkas as a rifle "with some camo patterns or painting on it." The weapon was never located.

{¶6} Appellant was indicted on two counts of Attempted Murder, with firearm specifications, two counts of Felonious Assault, with firearm specifications, and one count of Tampering with Evidence. Appellant plead not guilty to all counts and a jury trial was

2

held. At trial Gonzalez and Jaime testified that they no longer believed Appellant was the shooter because he was their friend. Alex, Officer Caruso, Officer Bainton, Lieutenant Palinkas, Lieutenant Gillespie, and Appellant also testified. The jury acquitted Appellant on both counts of Attempted Murder, but found him guilty on all remaining counts.

{¶7} At Appellant's sentencing hearing, he was sentenced to a prison term of four to six years for each count of Felonious Assault, three years for gun specifications on each count of Felonious Assault, and eighteen months for Tampering with Evidence. The court ordered prison terms for both counts of Felonious Assault to be served concurrently to one another. The court imposed mandatory consecutive sentences for each gun specification. The court ordered the prison term for Tampering with Evidence to be served consecutively to the other prison terms. In ordering consecutive sentences, the court stated, "This Court further finds that a consecutive sentence is necessary to protect the public from future crime and to punish the offender, and that the consecutive sentence is not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶8} Appellant timely appealed and raises two assignments of error.

{¶9} First assignment of error: Appellant's convictions were against the manifest weight of the evidence.

{¶10} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight

3

is not a question of mathematics, but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶11} Since circumstantial evidence and direct evidence possess the same probative value, a jury may consider circumstantial evidence. *State v. Jenks*, 61 Ohio St. 3d 259, 272, 574 N.E.2d 492 (1991).

{¶12} R.C. 2903.11(A)(2), Felonious Assault, provides: "no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance."

{¶13} R.C. 2921.12(A)(1), Tampering with Evidence, provides: "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶14} Appellant contends that his convictions of Felonious Assault were against the manifest weight of the evidence because there was no eyewitness testimony that he

4

shot a twenty-two caliber rifle and no physical evidence connecting him to the gun that fired the shots. While he did admit to being at the scene and firing at the vehicle, Appellant now asserts that he did not shoot a twenty-two caliber rifle, but that he shot a BB gun. Appellant suggests that someone else shot at the vehicle with a twenty-two caliber rifle.

{¶15} Appellant is correct that there was neither eyewitness testimony nor physical evidence connecting him to the weapon. However, neither is necessary to convict him here. Further, one reason that there is no physical evidence connecting Appellant to the crime is that he admittedly hid the weapon he used to shoot at the vehicle when he fled from the scene.

{¶16} The witness testimony and circumstantial evidence weigh strongly against Appellant. First, Gonzalez testified that he had seen Appellant with a twenty-two caliber rifle in the past, even though Appellant testified that he never used one. Jaime testified that Appellant was upset and at her residence (where the shooting occurred) shortly before she heard shots fired. She also testified that she heard Gonzalez yelling for Appellant after she heard the shots. Lieutenant Palinkas testified that Appellant told him he was at the house and fired two shots while standing near a blue car by the garage. A shell casing was found at the scene next to the blue car.

{¶17} Appellant testified that he was at the residence talking to Jaime shortly before the shooting. He stated that he was upset because he had recently broken up with his girlfriend. Appellant testified that when he saw a vehicle enter the driveway, he thought it was his ex-girlfriend on a date, so he shot at the vehicle. Appellant testified that he stood by the blue car (where the shell casing was later found), fired two shots at Alex's vehicle, and heard Alex and Gonzalez exclaim after he fired the first shot. The

5

only evidence weighing in Appellant's favor is his own self-serving testimony that the shots hitting Alex's vehicle were not fired by him because he shot a BB gun, not a twenty-two caliber rifle. Appellant's suggestion that someone else must have shot with a twenty-two caliber rifle is not credible considering the greater weight of the testimony and circumstantial evidence. "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Eaton*, 19 Ohio St.2d 145, 160, 196, 249 N.E.2d 897, 906 (1969), vacated on other grounds 408 U.S. 935, 33 L.Ed.2d 750, 92 S.Ct. 2857 (1972).

{¶18} Reviewing the greater weight of the evidence, the testimonies of police, Gonzalez, and Jaime were more credible and reliable than Appellant's self-serving testimony. Considering the evidence and all reasonable inferences, this is not an exceptional case where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶19} Appellant also asserts that his conviction of Tampering with Evidence was against the manifest weight of the evidence. However, Appellant makes no argument concerning this claim. Under App.R. 16(A)(7), it is Appellant's duty to do so. The appellate court will not construct an argument on his behalf.

{¶20} Appellants first assignment of error is without merit.

{¶21} Second assignment of error: The trial court erred by imposing a consecutive sentence.

{¶22} There are three ways an appellant can challenge consecutive sentences on appeal. *State v. Lewis*, 11th Dist. Lake No. 2001-L-060, 2002-Ohio-3373, ¶ 6. First, the

6

appellant may argue that the sentencing court failed to state the findings for consecutive sentences that R.C. 2929.14(C)(4) requires. *State v. Torres*, 11th Dist. Lake No. 201-L-122, 2003-Ohio-1878, ¶ 18; R.C. 2953.08(G)(1). Second, the appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. *State v. Lewis*, at ¶ 7; R.C. 2953.08(G)(2)(a). Third, the appellant may argue that his sentence is clearly and convincing otherwise contrary to law. R.C. 2953.08(G)(2)(b).

{¶23} Here, Appellant makes two arguments. We first address whether the trial court erred by failing to incorporate findings under R.C. 2929.14(C)(4)(a-c) at the sentencing hearing and on the sentencing entry.

{¶24} When ordering consecutive sentences for multiple offenses, R.C. 2929.14(C)(4) requires a sentencing court to make three statutory findings:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

7

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a-c).

{¶25} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177,16 N.E.3d 659, ¶ 37. "However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. When there is a discrepancy between the sentencing hearing and the sentencing entry, a nunc pro tunc order may be necessary to reflect what the sentencing court decided at the hearing. *Id.* at ¶ 30. But, a nunc pro tunc order is only necessary when the sentencing entry omits a required finding that was made at the sentencing hearing. *Id.*

{¶26} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * that the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(b). A sentence is contrary to law when the court fails to make the required findings for consecutive sentences. *State v. Barajas-Anguiano*, 11th Dist. Geauga No. 2017-G-0112, 2018-Ohio-3440, ¶ 19.

Case No. 2022-A-0006

{¶27} Here, at the sentencing hearing, the court stated the first two required findings under R.C. 2929.14(C)(4), but failed to make a third finding under R.C. 2929.14(C)(4)(a-c).

{¶28} In its judgment entry, the court incorporated the first two findings under R.C. 2929.14, and then constructed its own third finding: "the nature of the offender's criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime." However, the "nature of the offender's criminal conduct" is not a permissible finding under R.C. 2929.14(C)(4)(a-c).

{¶29} The state correctly asserts that a word-for-word recitation of the language of the statute is not required. *Bonnell.* at ¶ 37. Here, however, the record demonstrates that the court's finding regarding the "nature" of Appellant's criminal conduct was not merely a misspoken finding about his "history" of criminal conduct. Nor does it reflect that the "history" of Appellant's criminal conduct was a factor considered in imposing consecutive sentences. The court specifically stated, under R.C. 2929.12(C)(4), that Appellant had a "very minimal" criminal record and noted that it considered his minimal criminal history as a *mitigating* factor when imposing his sentence. But, the court's "nature of the offender's criminal conduct" finding under R.C. 2929.14(C)(4)(a-c) was used, essentially, as an *aggravating* factor justifying consecutive sentences. Clearly, the disparate conclusions the court drew from its two findings show they were not the same finding and the court did not make the one it had to in order to impose consecutive sentences. Consistent with the presumption of concurrent sentences, Appellant's Tampering with Evidence sentence is modified to be served concurrently.

Case No. 2022-A-0006

{¶30} We hereby vacate the sentence, reverse and remand to the sentencing court to resentence Appellant with the specific instruction to order his sentence under Tampering with Evidence to be served concurrent to his other prison terms.

{¶31} The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded with the foregoing instruction.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.